UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAAD ZUHAIR RABIEH,<br><br>Plaintiff,<br><br>v.<br><br>PARAGON SYSTEMS INC., et al.,<br><br>Defendants. | Case No. 5:16-cv-04256-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 74 |

Plaintiff Raad Zuhair Rabieh ("Plaintiff") brings this action against Defendant Paragon Systems Inc. and its employees Joseph Vegas, Jose Leuterio, Mario Ayala, Kenneth Inman, and DOES 1-20 (collectively, "Defendants"), alleging Constitutional violations and various state law claims. Presently before the Court is a motion to dismiss all of the claims in Plaintiff's Second Amended Complaint ("SAC"). Dkt. No. 74. The Court finds this matter suitable for decision without oral argument and VACATES the hearing set for June 14, 2018. Civ. L.R. 7-1(b). For the reasons set forth below, Defendants' motion is GRANTED.

I.  **BACKGROUND**

Paragon Systems Inc. ("Paragon") is a private corporation which contracts with the federal government, the State of California, and local government to provide security for state and federal offices, including at the Robert F. Peckham Federal Building at 280 South 1st Street in San Jose, California. SAC, Dkt. No. 72, at ¶ 6. Defendants Joseph Vegas, Jose Leuterio, Mario Ayala, Kenneth Inman, and DOES 1-20 are Paragon employees (collectively, "Employee Defendants"). *Id.* ¶¶ 7-11.

Plaintiff alleges that, on April 12, 2012 at approximately 11:30 a.m., he concluded his business at the Social Security Administration offices at the Robert F. Peckham Federal Building and proceeded to exit the building. *Id*. ¶ 17. Believing he was following directions, Plaintiff attempted to leave through the emergency exit instead of through the customary exit. *Id*. Plaintiff was then stopped by Ayala, who asked Plaintiff to accompany him inside so that an incident report could be prepared. *Id*. Plaintiff complied. *Id*.

Back inside the building, Plaintiff was handed off to Leuterio, who took Plaintiff's driver's license and directed him to sit down. *Id*. ¶ 18. After waiting for about 30 minutes, Plaintiff got up and asked Ayala "what is the delay." *Id*. ¶ 19. Ayala replied that Leuterio was gathering information from Plaintiff's driver license and instructed Plaintiff to sit back down until Leuterio was finished. *Id*. Plaintiff asked to speak to Leuterio's supervisor, and, when Ayala identified himself as the supervisor, Plaintiff asked to speak to Ayala's supervisor. *Id*. Ayala told Plaintiff that his supervisor was in San Francisco, but provided Plaintiff with his supervisor's telephone number and welcomed Plaintiff to call him. *Id*.

Plaintiff alleges that, as he was typing the supervisor's number into his phone, Vegas— who was in the vicinity but previously uninvolved—grabbed Plaintiff's phone out of his hand and yelled "you can't use your phone in here!!!" *Id*. Vegas then yelled "do you want me to arrest you?!?" *Id*. Then, Plaintiff claims that without further warning, Vegas twisted Plaintiff's arm behind his back, Vegas and Leuterio slammed Plaintiff's face into a wall, and Vegas, Leuterio, and Inman tackled Plaintiff to the ground. *Id*.

After another 15-20 minutes, Vegas and Leuterio had Plaintiff stand up and placed him in handcuffs. *Id*. ¶ 20. Plaintiff requested someone call the San Jose Police Department ("SJPD"). *Id*. Ten minutes later, two officers responded. *Id*.

Plaintiff alleges that he overheard one of the police officers asking Ayala if it was a crime to accidentally walk out of the emergency exit, and Ayala said no. *Id*. ¶ 21. One of the officers then walked over to Plaintiff and asked "have you ever been arrested?" *Id*. Plaintiff said no. *Id*.

Then, with Plaintiff still in handcuffs, one of the police officers walked Plaintiff to his

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
2

patrol vehicle. *Id*. ¶ 22. Once at the vehicle, the officer removed the handcuffs. *Id*. The officer then told Plaintiff, "what I'm about to tell you is really important; we ([the two officers]) have nothing to do with this." *Id*. Plaintiff was then handed a citation for misdemeanor battery. *Id*. No formal charges were ever filed against Plaintiff. *Id*. ¶ 23.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. Fed. R. Civ. P. 12(b)(6); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's first three causes of action (SAC ¶¶ 25-39), which claim constitutional violations under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971), or, in the alternative, 42 U.S.C. § 1983. Motion to Dismiss ("MTD"), Dkt. No. 74, at 4-6. Defendants also argue that the Court should decline to exercise supplemental jurisdiction under Plaintiff's remaining causes of action (SAC ¶¶ 40-65), which allege state law claims. MTD 6-7.

### A. Counts I-III: *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Id*. at 70. Since *Bivens*, the Supreme Court has only implied a *Bivens* cause of action in two other instances. *See Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) (implying right of action under the Due Process Clause of the Fifth Amendment); *Carlson v. Green*, 446

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
3

U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (implying right of action under the Cruel and Unusual Punishments Clause of the Eighth Amendment). These cases notwithstanding, the Supreme Court has made "clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857, 198 L. Ed. 2d 290 (2017).

Private corporations cannot be sued under *Bivens*. *See Malesko*, 534 U.S. at 63 (declining to apply *Bivens* to private corporations); *see also Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) ("[T]o the extent that Agyeman sought to hold Corrections Corporation itself liable, the case could not be brought under *Bivens* . . . since Corrections Corporation is a private corporation."); *Root v. United States*, 67 F. App'x 451 (9th Cir. 2003) ("The district court properly dismissed Root's claims against the Wackenhut Corrections Corporation and the FTC Oklahoma City, FCI Sheridan and FCI Taft facilities because a *Bivens* cause of action is not available against private entities."). Accordingly, Plaintiff's *Bivens* claims against Paragon the entity will be DISMISSED.[1] In addition, because these claims are foreclosed as a matter of law and further amendment would be futile, the Court dismisses them WITHOUT LEAVE TO AMEND.

What remains, then, are Plaintiff's *Bivens* claims against the Employee Defendants. The Court cannot summarily dismiss these claims because they are directed to private individuals. As the Ninth Circuit has recognized, the Supreme Court has yet to "completely foreclose applying *Bivens* to private actors." *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (citing *Minneci v. Pollard*, 565 U.S. 118, 120, 132 S. Ct. 617, 181 L. Ed. 2d 606 (2012)). The Court thus turns to analytical framework established by the Supreme Court for determining the appropriateness of a *Bivens* remedy.

In determining whether to imply a *Bivens* remedy, "the first question a court must ask . . . is whether the claim arises in a new *Bivens* context, i.e., whether the case is different in a

---

[1] The Court also notes that, even if a Bivens remedy was not foreclosed against private corporations, Plaintiff's *Bivens* claims against Paragon would fail for the additional reason that Plaintiff has only alleged constitutional violations that were committed by individual Employee Defendants. *See* SAC ¶¶ 17-24. "*[R]espondeat superior* is inapplicable to *Bivens* actions." *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). Thus, Paragon cannot be held liable merely because it employed these individuals.

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
4

meaningful way from previous *Bivens* cases decided by this Court." *Abbasi*, 137 S. Ct. at 1864 (internal quotation marks and citation omitted). "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous *Bivens* cases." *Id*.

Here, this case is meaningfully different from cases where a *Bivens* remedy has been implied. Although *Bivens* itself implied a damages remedy under the Fourth Amendment, *Bivens*, 403 at 395-96, that case involved federal officers. In addition, although the Ninth Circuit implied a damages remedy available under the First Amendment in *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986), that arose in the substantially different context of alleged harassment for plaintiff's controversial political activities.

Thus, where as here a case presents a new *Bivens* context, a court must undertake a "special factors analysis" to determine whether a *Bivens* remedy is appropriate. *Abbasi*, 137 S. Ct. at 1860. The Ninth Circuit recently summarized the relevant analysis as follows:

> The Supreme Court in *Wilkie* provided a two-step analysis when courts decide whether to recognize a *Bivens* remedy. *See* 551 U.S. at 550, 127 S. Ct. 2588. "In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id*. (quoting *Bush*, 462 U.S. at 378, 103 S. Ct. 2404). Second, Supreme Court precedent "make[s] clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18, 100 S. Ct. 1468).

*Vega*, 881 F.3d at 1153. The inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58.

Applying these principles here, the Court does not find that it would be appropriate to infer a *Bivens* remedy. First, alternative remedies exist. In his SAC, Plaintiff alleges six state law claims for alleged assault, battery, negligence, negligent infliction of emotional distress and various discriminatory violations. SAC ¶¶ 40-65. Even if Plaintiff has no right to relief under

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

5

*Bivens*, he can still pursue these claims. These claims "provide roughly similar incentives for potential defendants to comply with the [First, Fourth, and Fourteenth] Amendment[s] while also providing roughly similar compensation to victims of violations." *Minneci*, 565 U.S. at 132. As such, they provide an adequate alternative for protecting Plaintiff's interests and weigh against implying a remedy under *Bivens*. *Compare, e.g.*, *Minneci*, 565 U.S. at 132 (declining to imply *Bivens* remedy where state law tort claims existed); *Malesko*, 534 U.S. at 66 (same); *Vega*, 881 F.3d at 1154 (same). *See also Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

Second, special factors counsel against implying a *Bivens* action here. The Employee Defendants are private individuals. In both the § 1983 and the *Bivens* context, courts have been hesitant to permit private individuals to sue each other for constitutional violations. *See Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) (discussing how "courts have recognized the need to limit the liability of private persons" in the § 1983 context and that "[t]here exists ample reason to be even more cautious about imputing liability to private actors under *Bivens*" because it is a judicial creation). This has persuasive force here. As will be discussed below, Plaintiff has not adequately alleged that the actions of the Employee Defendants constitute anything more than private conduct. *See* Section III.B. As such, it would generally be inappropriate to infer a constitutional violation in this context. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S. Ct. 2744, 2753, 73 L. Ed. 2d 482 (1982) ("[M]ost rights secured by the Constitution are protected only against infringement by governments . . . .") (internal citation and quotation marks omitted); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999) ("§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful") (internal citation and quotation marks omitted). This too weighs against implying a remedy under *Bivens*.

Accordingly, in light of the above-discussed considerations, the Court declines to imply a *Bivens* remedy against the Employee Defendants. Plaintiff's *Bivens* claims against the Employee

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
6

Defendants will be DISMISSED. In addition, because these claims are foreclosed as a matter of law and further amendment would be futile, the Court dismisses them WITHOUT LEAVE TO AMEND.

### B. Counts I-III: Claims Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants challenge Plaintiff's allegations with respect to this second prong, arguing that Plaintiff has not adequately alleged that Defendants were "acting under the color of state law." MTD 5-6.

It is generally presumed that private individuals and entities do not act "under color of state law" within the meaning of § 1983. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (citation omitted), *cert. denied*, 565 U.S. 1116 (2012). Nevertheless, private parties may be held liable under § 1983 if a plaintiff shows that their "conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Lugar*, 457 U.S. at 937. "The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation and quotation marks omitted). A Section 1983 plaintiff has the burden to plead and prove state action by a private defendant. *See id.* (citing *Lugar*, 457 U.S. at 937).

Here, Plaintiff asserts that Defendants were "acting under the color of state law" under two of these tests: First, Plaintiff argues that the Employee Defendants engaged in "joint action" with the SJPD officers when they huddled together and spoke in hushed tones. Opposition to Motion to Dismiss ("Opp."), Dkt. No. 76, at 4-5. Second, Plaintiff argues that the Employee Defendants were performing a "public function" when they detained Plaintiff and took actions characteristic of police officers. Opp. 6-7. The Court addresses each of these arguments in turn.

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

7

The Court begins with joint action. "The joint action test asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao*, 698 F.3d at 1140 (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). "This requirement can be satisfied either 'by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.'" *Id*. (quoting *Franklin*, 312 F.3d at 445). "Ultimately, joint action exists when the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" *Id*. (quoting *Gorenc v. Salt River Project Agric. Improvement & Power Dist*., 869 F.2d 503, 507 (9th Cir. 1989)) (alteration in original).

Here, Plaintiff has failed to allege any joint action between the Employee Defendants and the state. Plaintiff posits that the Employee Defendants acted jointly with the SJPD when they huddled together and spoke in hushed tones. Opp. 4-5. In fact, Plaintiff's own allegations admit the opposite. The SJPD became involved when Plaintiff—not the Employee Defendants— requested that the SJPD be called. SAC ¶ 20. By the time the SJPD arrived on the scene, the bulk (if not all) of the alleged constitutional violations had already taken place. *See* SAC ¶¶ 12-20. Plaintiff had already been allegedly silenced, detained, and assaulted, and the SJPD played no part in these events. *Id*. The only alleged point of contact between the Employee Defendants and the SJPD was when the police officers first arrived on the scene. *Id*. ¶¶ 20-21. However, even construing Plaintiff's allegations in the light most favorable to him, this conversation appears to be limited to helping the SJPD understand the events that had transpired. *See id*. ¶ 21. If anything, this suggests a *lack* of awareness of the Employee Defendants' actions—not joint action. Finally, the SJPD's independence is confirmed by Plaintiff's own allegations regarding the final events of the day: the SJPD took Plaintiff *off* the premises and back to their patrol car before issuing a citation. *Id*. ¶ 22. One officer also, according to Plaintiff, specifically clarified: "what I'm about to tell you is really important; we ([the two officers]) have nothing to do with this." *Id*. Accordingly, even taking all of Plaintiff's factual allegations as true and construing them in the light most favorable to Plaintiff, they confirm that there was no joint action within the meaning of

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

8

§ 1983 between the Employee Defendants and the SJPD. Plaintiff's first theory of state action fails.

The Court turns next to public function. "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (internal citation and quotation marks omitted). "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Id.* (internal citation and quotation marks omitted).

The Supreme Court has explicitly left open the question of whether and under what circumstances "police protection" constitutes a public function under § 1983. *Flagg Bros. v. Brooks*, 436 U.S. 149, 163-64, 98 S. Ct. 1729, 1737, 56 L. Ed. 2d 185 (1978). District and appellate courts addressing this issue have reached mixed results. The Sixth Circuit summarized the general trend as follows:

> The line divides cases in which a private actor exercises a power traditionally reserved to the state, but not exclusively reserved to it, e.g., the common law shopkeeper's privilege, from cases in which a private actor exercises a power exclusively reserved to the state, e.g., the police power. Where private security guards are endowed by law with plenary police powers such that they are de facto police officers, they may qualify as state actors under the public function test.

*Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 637 (6th Cir. 2005). For example, a security guard that could patrol and eject unruly persons from a hospital, but who could not carry a weapon and had to call the police when individuals became belligerent was not a state actor. *See Johnson v. LaRabida Children's Hospital*, 372 F.3d 894, 896-97 (7th Cir. 2004). However, a casino security guard authorized by Michigan statute to make arrests without a warrant was a state actor. *Romanski*, 428 F.3d at 638. Also, the Ninth Circuit has held that an individual making a citizen's arrest is not a state actor under the joint action test. *Collins v. Womancare*, 878 F.2d 1145, 1154-56 (9th Cir. 1989).

Here, Plaintiff has not adequately alleged that the Employee Defendants were performing a

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
9

"public function" under § 1983. The SAC does not allege that Employee Defendants were endowed with the type of plenary police power that is "traditionally and exclusively governmental." *Kirtley*, 326 F.3d at 1093. Indeed, it makes almost no allegations regarding the scope of their power at all. At most, the allegations suggest that the security guards had some power to detain a person on the premises, temporarily confiscate personal property (e.g., Plaintiff's driver license), and place a person in handcuffs. *See* SAC ¶¶ 17-18. However, this small collection of abilities, by itself, is not exclusively governmental and, as such, is insufficient under the public function test. Plaintiff's second theory of state action fails.

Accordingly, because Plaintiff has failed to plausibly allege state action under either of the theories he asserts, his claims against the Employee Defendants under § 1983 will be DISMISSED. However, because further amendment may cure these deficiencies, these claims are dismissed WITH LEAVE TO AMEND.

The only question that remains, then, is whether Paragon itself can be held liable under § 1983. Plaintiff does not claim that Paragon committed constitutional violations of its own, but nevertheless argues that Paragon can be held liable because it supervises and manages the Employee Defendants. Opp. 7-8; SAC ¶¶ 25-39. As such, Plaintiff's theory of liability fails at the outset: because, as discussed above, Plaintiff has failed to plausibly allege that the Employee Defendants are liable under § 1983, he cannot plausibly allege that Paragon is liable under § 1983. Further, even if Plaintiff's allegations against the Employee Defendants had been sufficient, his theory of liability against Paragon is problematic for at least two other reasons:

First, "[t]here is no *respondeat superior* liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, Paragon cannot be held liable for the constitutional violations of the Employee Defendants simply because it employs them.

Second, in *Tsao*, 698 F.3d at 1138-39, the Ninth Circuit held that the Supreme Court's decision in *Monell v. Dept't of Soc. Servs.*, 436 U.S. 658, 691 (1978) applies to private entities that act on behalf of municipalities. Under *Monell*, § 1983 claims may be brought against municipalities only if a plaintiff demonstrates injury resulting from "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694, 98 S. Ct. 2018. Thus, at least in the case of municipality actions by private entities, a plaintiff must identify some policy or custom that allegedly caused his injuries to impose liability under § 1983. *See Tsao*, 698 F.3d at 1138-39. The Ninth Circuit has "assumed" but not explicitly decided that *Monell* also applies to private entities acting on behalf of a state. *See Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 n.1 (9th Cir. 2017).

Here, Plaintiff makes no allegations that his injuries resulted from Paragon's policies or customs. Thus, even if Plaintiff had adequately alleged state action under a theory of joint action with the SJPD, his claims against Paragon would fail for this reason. Similarly, even if Plaintiff had adequately alleged state action under a police power public function theory, his claims against Paragon would at least be disfavored in light of *Tsao*. Thus, Plaintiff's claims against Paragon falter for this reason as well.

Accordingly, in light of the above considerations, Plaintiff's claims against Paragon will be DISMISSED. However, because further amendment may cure these deficiencies, these claims are dismissed WITH LEAVE TO AMEND.

### C. Counts IV-IX: State Law Claims

Because the Court will permit amendment at least with respect to Plaintiff's claims under § 1983, the Court need not reach Defendants' arguments regarding supplemental jurisdiction.

## IV. ORDER

Based on the foregoing, Defendants' motion is GRANTED. Plaintiff's *Bivens* claims are DISMISSED WITHOUT LEAVE TO AMEND. Plaintiff's claims under 42 U.S.C. § 1983 are DISMISSED WITH LEAVE TO AMEND.

Any amended complaint must be filed on or before July 2, 2018, and must be consistent with the discussion above. Plaintiff is advised the procedural due process claim will be dismissed with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b) if an amended complaint is not filed by the deadline.

Case No.: 5:16-cv-04256-EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
11

**IT IS SO ORDERED.**

Dated: June 11, 2018

EDWARD J. DAVILA
United States District Judge